IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD S.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 6:18-cv-01448-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Ronald S. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by: (1) evaluating an inadequate record regarding Plaintiff's mental impairments and declining to order a psychological examination; (2) failing to credit Plaintiff's testimony; (3) failing to credit Dr. Satish Bankuru, M.D., Dr. Bill Hennings, Ph.D., and Dr. James Bailey's, Ph.D., medical opinions; and (4) failing to credit lay witness statements. Pl.'s Br. 5–6, ECF No. 13. Because

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

there is substantial evidence in the record to support the ALJ's findings, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for SSI on October 23, 2014, alleging disability since October 1, 2012. Tr. 170–77. His claim was denied initially and upon reconsideration. Tr. 106–09, 114–23. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable B. Hobbs on July 13, 2017. Tr. 121–23, 39–75. ALJ Hobbs denied Plaintiff's claim by a written decision dated August 8, 2017. Tr. 12–29. Plaintiff sought review from the Appeals Council and was denied on June 12, 2018, rending the ALJ's decision final. Tr. 168–69, 1–6.

Plaintiff was 49 at the time of his alleged disability onset and 53 at the time of his hearing. *See* tr. 23, 170, 39. Plaintiff earned his GED and two associate's degrees. Tr. 44–45. He worked as a repair technician, customer service technician, U.S. Census enumerator, website administrator, business owner, and field service technician. Tr. 205. He alleges disability due to panic attacks, anxiety disorder, and gastrointestinal bleeding. Tr. 213.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the

administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

## **I. Plaintiff's Mental Impairments**

Plaintiff argues that the medical record the ALJ reviewed was inadequate regarding his mental impairments and the ALJ erred by declining to order a consultative psychological examination. Pl.'s Br. 6–10. The ALJ has an independent duty to fully and fairly develop the record. *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996) (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). The agency is to make "every reasonable effort" to assist a claimant in

3 – OPINION AND ORDER

gathering relevant evidence. 20 C.F.R. §§ 404.1512(d), 416.912(d). The agency will collect information including from at least 12 months prior to the application date month, or, if applicable, from the alleged onset date. 20 C.F.R. §§ 404.1512(d)(2), 416.912(d)(2). The agency may order a consultative examination if there is difficulty acquiring evidence from treating sources. 20 C.F.R. §§ 404.1512(e), 416.912(e). However, the duty to further develop the record is only triggered where "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

Here, Plaintiff requested a psychological evaluation to determine any limitations resulting from his mental health impairments. Tr. 236. He renewed his request at the hearing, explaining that he had no recent counseling records. Tr. 43, 74. The ALJ denied Plaintiff's request because the record contained reports from a mental health care provider and Plaintiff provided no reason for discontinuing that treatment and transferring to a primary care provider. Tr. 15 (citing tr. 236). The ALJ further found that Plaintiff's care was transferred due to an "extended period of stability" and there was no indication that his anxiety symptoms worsened since then. Tr. 15.

The ALJ found that although Plaintiff told Dr. Pallav Pareek, M.D., that he had lifelong anxiety and significant avoidance issues, Plaintiff first mentioned anxiety and panic attacks in April 2014. Tr. 21 (citing tr. 332–34, 281). He worked for many years despite his anxiety and panic attacks. Tr. 21 (citing tr. 179–80). He improved greatly with buspirone and fluoxetine. Tr. 21 (citing tr. 324–41, 378–83). He declined counseling because his medications were sufficient in August 2014 and denied any panic for several weeks in September 2014. Tr. 21 (citing tr. 335–36, 337). He only had occasional episodes after that and experienced improved sleep and

less anxiety with medication increases. Tr. 21 (citing tr. 332–34, 330–31, 328–29, 326–27, 324–25). During an interview with a field office employee in November 2014, Plaintiff presented as pleasant and cooperative and showed no difficulty understanding, concentrating, talking, or answering questions. Tr. 21 (citing tr. 193–95). This demonstrated improvement from when Plaintiff walked out on two treating source appointments in mid-2014, before he engaged in ongoing treatment. Tr. 21 (citing tr. 359–62, 341).

By early 2015, Plaintiff's anxiety was down to three to four from 10 out of 10. Tr. 21 (citing tr. 324–25). He reported continued improvements throughout 2015 and 2016 and made arts and crafts, went out for coffee with others, socialized, went on vacation, drove, and meditated. Tr. 21 (citing tr. 378–83). In January 2016, Dr. Pareek transferred care to Plaintiff's primary care provider, Satish Bankuru, M.D. Tr. 21 (citing tr. 378–79). The ALJ found that this demonstrated a level of stability that did not require specialist supervision. Tr. 21. Dr. Bankuru reported that Plaintiff's anxiety and panic were well-controlled. Tr. 21 (citing tr. 408–11, 403–07, 399–402). The most recent evidence in the record said that Plaintiff had intermittent panic episodes, but not that it limited his functioning greatly or was so frequent that he needed specialized care. Tr. 21 (citing tr. 428–31).

In January and April 2015, state agency non-examining psychological consultants Dr. Bill Hennings, Ph.D., and Dr. James Bailey, Ph.D., opined that Plaintiff should be limited to simple, routine, repetitive tasks with no public contact, "would be best suited to an environment where coworker contact is kept to a minimum," and "would benefit from a work[] environment that did not include constant change." Tr. 22 (citing tr. 85–87, 99–101). The ALJ found that these limitations may have been appropriate early in the relevant period, but subsequent evidence

of stability showed that Plaintiff did not need complexity, coworker interaction, or change restrictions. Tr. 22 (citing tr. 378–83, 384–424). The ALJ only limited Plaintiff to occasional interactive contact with the public. Tr. 19, 22.

By June 2017, Plaintiff continued to have intermittent panic episodes, but his primary reason for seeing Dr. Bankuru was to fill out his disability paperwork. Tr. 428. Medical expert Dr. Victoria Eskinazi, Ph.D., M.D., testified that Plaintiff's mental impairments were at least as severe as his physical impairments and recommended a psychological evaluation. Tr. 63, 69. Regardless, the ALJ pointed to substantial evidence in the record to support his conclusion that Plaintiff's symptoms improved with medication and a psychological consultative examination was unnecessary. Tr. 15, 21–22.

## II. Plaintiff's Credibility

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). When there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair,* 885 F.2d at 603). The ALJ "may consider a range of factors in assessing

credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. Plaintiff testified that he worked at a call center, which was stressful because people called upset. Tr. 49, 60. He then repaired and sold liquidated items for three days until his wife made him quit because his bleeding worsened. Tr. 50. He bleeds when

he gets stressed out, usually one week per month. Tr. 53, 55. Bleeding makes him feel weak and short of breath and he tires from walking across the room, but it does not affect him much if he takes iron. Tr. 54, 59. Medications significantly helped his anxiety and panic and his primary care physician did not refer him to mental health counseling. Tr. 56–57. He had a panic attack the morning of the hearing and the week prior. Tr. 57. During his panic attacks, his blood pressure rises and he gets nervous and jittery, cannot focus, and usually bleeds. Tr. 58. His episodes last three to four hours with medication. *Id.* He said he had to stop doing anything but that he has to occupy his mind to distract himself. Tr. 59. The ALJ noted that Plaintiff did not look significantly anxious during the hearing. Tr. 20.

In November 2014, Plaintiff said that stressful situations and interactions with others caused his panic attacks and anxiety. Tr. 213. His stress caused him to bleed and need blood transfusions and hospitalization. *Id.* A panic attack caused him to lose one job. *Id.* Each day, he took medication, watched a television show, meditated, did household chores such as dishes, and took care of his pets. Tr. 214. He had no problem with personal care, prepared meals every few days, went outside once per day, went out alone, and shopped every few days. Tr. 216. He liked art, reading, watching television, and computer programming. Tr. 217. Meditation improved his symptoms. *Id.* He did not attend social events or go places without his wife. *Id.* He could pay attention well unless he was having panic or anxiety, which could come out of nowhere and force him to stop doing something. Tr. 218. He could follow instructions excellently, mostly got along with authority figures, and had never been laid off due to problems getting along with others. *Id.* He could not handle stress or changes in routine. Tr. 219.

The ALJ found that Plaintiff's mental impairments improved over the course of the relevant period, reaching an "extended period of stability," as explained above. *See* tr. 21–22. Regarding Plaintiff's physical impairments, the ALJ found that Plaintiff had a history of gastrointestinal bleeds and anemia with brief hospitalizations in June 2011 and May and June 2013. Tr. 22. (citing tr. 317, 305, 288, 264–65). Plaintiff went to the emergency room with a panic attack in April 2014 but was not admitted. Tr. 22 (citing tr. 276–77). He had no hospitalizations or transfusions since he applied for disability. Tr. 22.

The ALJ also found that the medical evidence in the record did not show that fatigue, shortness of breath, or related symptoms significantly limited Plaintiff. *Id.* Plaintiff denied anemia related symptoms and fatigue in October 2014 and April 2015. *Id.* (citing tr. 353, 342, 420). He said he had "tiredness" on several occasions but did not describe it as significantly limiting. Tr. 22 (citing tr. 403, 399); *see* also tr. 54–55 (describing varying energy levels). Dr. Bankuru diagnosed Plaintiff with chronic fatigue in June 2017 but did not exclude other conditions in accordance with SSR 14-1p.[2] Tr. 22 (citing tr. 431). Despite Plaintiff's hypertension and bleeding, he refused anti-hypertensive medications until early 2017. Tr. 22 (citing tr. 406, 401–02, 395–97). "[The Ninth Circuit has] long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.)) (internal quotation marks

---

[2] SSR 14-1p stipulates that, "a physician should make a diagnosis of [chronic fatigue syndrome] 'only after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded.'" 2014 WL 1371245 (April 3, 2014).

omitted). Plaintiff said that blood pressure medication did not help, but records show normal blood pressure levels and no issues with medication. Tr. 22 (citing tr. 433, 430); *see also* tr. 70.

Substantial evidence exists in the record to support the ALJ's finding that Plaintiff was not entirely credible. Therefore, the ALJ did not err in discounting Plaintiff's credibility.

### III. Dr. Bankuru, Dr. Hennings, and Dr. Bailey's Medical Opinions

Plaintiff argues that the ALJ improperly rejected Dr. Satish Bankuru, M.D., Dr. Bill Hennings, Ph.D., and Dr. James Bailey's, Ph.D., medical opinions. Pl.'s Br. 10–15. "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Dr. Bankuru, Dr. Hennings, and Dr. Bailey's opinions are contradicted. *Compare* tr. 425–27, 85–87, and 99–101 *with* tr. 61–70. Therefore, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence to properly reject their opinions. *See Bayliss*, 427 F.3d at 1216 (citation omitted).

When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.* An ALJ must weigh the following factors when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6).

Dr. Bankuru began treating Plaintiff in October 2014. Tr. 353–55. In May 2017, Dr. Bankuru said that Plaintiff had chronic blood loss anemia, generalized anxiety disorder, fatigue, tiredness, and lack of endurance. Tr. 425–26. Dr. Bankuru said that Plaintiff's anemia could be expected to last at least 12 months. Tr. 425. Dr. Bankuru opined that Plaintiff would be absent from work more than four days per month. Tr. 427. The ALJ gave Dr. Bankuru's opinion little weight. Tr. 23. The ALJ found that Dr. Bankuru's treatment records showed few instances of tiredness and no discussion of contemporaneous functional limitations. *Id.* Dr. Bankuru did not say how long Plaintiff would need to rest of lie down for, whether normal breaks and off-work hours would suffice, or what level of work activity would lead to Plaintiff's excessive absences. *Id.* Dr. Bankuru also appeared to lack familiarity with the Social Security Administration's rules and regulations. *Id.*

Plaintiff argues that he has severe, chronic anemia, fatigue and tiredness are common symptoms, he complained of fatigue to multiple providers, and Dr. Bankuru diagnosed him with chronic fatigue in June 2017. Pl.'s Br. 11–12. As discussed above, the ALJ found that the medical evidence in the record did not show that fatigue or related symptoms significantly limited Plaintiff, he denied anemia related symptoms and fatigue on two occasions, and he did not describe significant limitations due to tiredness at the hearing. *See* tr. 22–23, 353, 342, 420, 403, 399, 54–55. In May 2011, Plaintiff had increased fatigue, and in June 2011, he said that walking around his house fatigued him and he needed to rest, but he did not say how often or for how long. Tr. 309, 307. In April 2014, Plaintiff reported "episodes" of fatigue. Tr. 281. His chief complaint was panic attacks. *Id.* He had some tiredness with new medication in September 2014, but it had resolved. Tr. 337. In May 2015, he had cough, fatigue, and shaking but he had

pneumonia at that time. Tr. 366. In October 2015, he said his tiredness and exertional shortness of breath had been "much better." Tr. 412. He refused anti-hypertensive medication until early 2017. *See* tr. 22 (citing tr. 406, 401–02, 395–97). As explained above, Dr. Bankuru's chronic fatigue diagnosis does not meet SSR 14-1p. *See* tr. 22, 431; *see also* 2014 WL 1371245. Moreover, "[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. §§ 404.1508 and 416.908. Dr. Bankuru's diagnosis was unsupported by objective findings. *See* tr. 428–31.

      Plaintiff also argues that no regulation requires medical sources to assess contemporaneous functional limitations. Pl.'s Br. 12. As the ALJ found, however, the record contained few instances of tiredness and lacked any indication of functional limitations. Tr. 22–23; *see* tr. 337, 353, 420, 342. This demonstrates a lack of supportability and consistency. An ALJ need not accept an inadequately supported opinion. *Bayliss*, 427 F.3d at 1216. Plaintiff next argues that the ALJ improperly relied on Dr. Eskinazi's opinion. Pl.'s Br. 12. Dr. Eskinazi was a reviewing, not a treating, physician. *See* tr. 23. Plaintiff incorrectly states, however, that Dr. Bankuru evaluated Plaintiff's mental impairments in addition to his physical impairments. *See* Pl.'s Br. 12. Like Dr. Eskinazi, Dr. Bankuru's opinion was based solely on Plaintiff's physical impairments (specifically, anemia). *See* tr. 425–26.

      Lastly, Plaintiff argues that Dr. Bankuru was not required to be familiar with the agency's regulations and his lack of familiarity was not an important factor to consider. Pl.'s Br. 13. Dr. Bankuru's omissions are relevant here, however, because he failed to state how long Plaintiff would need to rest or lie down for, whether normal breaks or off-work hours would suffice, or

what level of work activity would cause Plaintiff to be absent. Tr. 23; *see* tr. 426–27. Dr. Bankuru's opinion was, therefore, incomplete. In contrast, Dr. Eskinazi testified that the light work associated with Plaintiff's RFC should not cause excessive absences. Tr. 68. The ALJ did not err in rejecting Dr. Bankuru's opinion.

Dr. Hennings and Dr. Bailey reviewed Plaintiff's medical records and completed mental residual functional capacity assessments in January and April 2015, respectively. Tr. 85–87, 99–101. As summarized above, Dr. Hennings and Dr. Bailey opined that Plaintiff should be limited to simple, routine, repetitive tasks with no public contact, "would be best suited to an environment where coworker contact is kept to a minimum," and "would benefit from a work[] environment that did not include constant change." Tr. 22 (citing tr. 85–87, 99–101). The ALJ found that the limitations Dr. Hennings and Dr. Bailey described may have been appropriate earlier, but subsequent evidence of stability showed that Plaintiff only needed to be limited to occasional interactive contact with the public. Tr. 19, 22 (citing tr. 378–83, 384–424).

Plaintiff argues that the ALJ failed to explain how Plaintiff's improved symptoms showed that he could sustain social interactions and competitive work. Pl.s' Br. 14–15. Dr. Hennings and Dr. Bailey only made recommendations regarding coworker contact and change. *See* tr. 86–87, 101. "An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005–06 (9th Cir. 2015) (citing *Carmickle*, 533 F.3d at 1165). The ALJ properly did so here. Further, neither evaluator opined that Plaintiff was unable to sustain competitive work. The ALJ did not err in rejecting Dr. Hennings and Dr. Bailey's opinions.

**IV. Lay Witness Statements**

Plaintiff argues that the ALJ failed to properly credit his stepdaughter's witness statements. Pl.'s Br. 18–19. Generally, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ . . . must give full consideration to the testimony of friends and family members." (citation omitted)). The ALJ's reasons for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An ALJ's failure to articulate such a germane reason is nonetheless harmless if the "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

Here, Plaintiff's stepdaughter—Jade C.—made a statement in December 2014 that described even greater limitations than Plaintiff alleged. *Compare* tr. 221–28 *with* 43–61, 213–220. Jade C. said she had known Plaintiff for 24 years and spent several hours per month with him. Tr. 221. She said Plaintiff's anxiety makes it impossible for him to work and any stress causes him internal bleeding. *Id.* He can barely leave the house. *Id.* He meditates daily and tries to control his anxiety. Tr. 222. He watches television, eats, does home projects, takes care of his pets, prepares meals, and does laundry. Tr. 222–23. He rarely goes outside and rarely goes out alone because he needs someone to go with him. Tr. 223–25. His impairments affect his ability

to complete tasks and concentrate. Tr. 226. He can only walk a short distance—from across the room up to a block—at times to exhaustion. *Id.* He gets distracted when he has anxiety but can pay attention for an hour or two and follows instructions well. *Id.* He does not handle stress or changes in routine well. Tr. 227.

The ALJ gave Jade C.'s statements little weight. Tr. 20–21. The ALJ found that Jade C. only interacted with Plaintiff several hours per month, therefore Jade C.'s statements had "limited evidentiary value." Tr. 20. The ALJ also found that Plaintiff's treatment records showed that his anxiety greatly improved, as explained above, contradicting Jade C.'s statement that Plaintiff could not interact socially. Tr. 20–21. Finally, the ALJ found that there were few complaints and findings regarding anemia's on Plaintiff's functioning, as explained above. Tr. 21. The ALJ provided germane and specific reasons for discounting Jade C.'s statements. *See Bruce*, 557 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054).

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 22nd day of January, 2020.

s/ Michael J. McShane  
Michael J. McShane  
United States District Judge